1
2
3
4
5
6
7        IN THE UNITED STATES DISTRICT COURT FOR THE
8              EASTERN DISTRICT OF CALIFORNIA
9

10   WILLIAM RAY JONES SR.,              )    1:12-cv-633-AWI/ JLT
                                         )
11                      Plaintiff,       )
                                         )    ORDER GRANTING LEHIGH'S
12        v.                             )    MOTION TO DISMISS WITH
                                         )    LEAVE TO AMEND
13   LEHIGH SOUTHWEST CEMENT             )
     COMPANY, INC.,                      )
14                                       )    (Doc. 7)
                        Defendant.       )
15                                       )
                                         )
16   _____)

17

18                          BACKGROUND

19        William Jones ("Plaintiff") was terminated from his employment from Lehigh Southwest

20   Cement Company ("Lehigh", "Defendant") effective August 19, 2011. Doc. 1-1 at 9.  Plaintiff

21   filed a grievance with the United Steel Workers Local 12-52 (the "Union") on August 30, 2011,

22   id. at 22, and also filed charges against United Steel Workers International ("International") in

23   September 2011 and January 2012 with the National Labor Relations Board ("NLRB"). Id. at 13-

24   20.  Plaintiff filed a claim against Lehigh with the Equal Employment Opportunity Commission

25   ("EEOC") and the EEOC mailed Plaintiff a right to sue notice on November 11, 2011. Id. at 11.

26   Plaintiff filed suit against Lehigh in Kern County Superior Court on February 29, 2012. Id. at 1.

27   The case was removed to this court on April 20, 2012, doc. 1, and Plaintiff's motion to remand

28   back to state court was denied on May 22, 2012. Doc. 17.  Defendant filed a motion on April 27,

1    2012, to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc.

2    7.[1]

3                                    **LEGAL STANDARD**

4          A claim may be dismissed under Fed. R. Civ. P. 12(b)(6) if the claim states no cognizable

5    legal theory or alleges insufficient facts to support a valid allegation. *Balistreri v. Pacifica Police*

6    *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

7          For purposes of a 12(b)(6) motion, all well-pleaded allegations are accepted as true and

8    are construed in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire &*

9    *Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008).  A well-pleaded allegation contains

10   sufficient facts to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S.

11   544, 570 (U.S. 2007).  To be plausible, alleged facts must be more than "merely consistent with a

12   defendant's liability;" the "sheer possibility" of unlawful behavior is insufficient. *Ashcroft v.*

13   *Iqbal*, 556 U.S. 662, 678 (2009).  Allegations that are merely conclusory, unwarranted deductions

14   of fact, or unreasonable inferences do not meet the plausibility standard and need not be accepted

15   as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

16         "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a

17   memorandum in opposition to a defendant's motion to dismiss. Facts raised for the first time in

18   opposition papers should be considered by the court in determining whether to grant leave to

19   amend or to dismiss the complaint with or without prejudice." *Broam v. Bogan*, 320 F.3d 1023,

20   1026 n.2 (9th Cir. 2003) (citations omitted).  The court may, however, consider materials that are

21   attached to the complaint in ruling on a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d

22   668, 688 (9th Cir. 2001).

23   _____

24         [1] Plaintiff filed a response to Lehigh's reply to Plaintiff's opposition to the motion to
     dismiss.  Local Rule 78-230, which governs civil motions, does not provide for responses to

25   reply motions. *See, e.g., Gabales v. County of San Joaquin*, 2009 U.S. Dist. LEXIS 80754 at *2
     n.1 (E.D. Cal. Sept. 3, 2009).  The court therefore strikes Doc. 23 and the attached exhibit, a copy

26   of the collective bargaining agreement between Lehigh and the Union. Plaintiff may include a
     copy of the agreement in any amended complaint.

27

28                                             2

1    Where, as here, the plaintiff is a pro se litigant, the plaintiff's complaint is "to be liberally

2    construed" and, "however inartfully pleaded, must be held to less stringent standards than formal

3    pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation

4    marks and citations omitted).[2]

5

6                                    **ALLEGED FACTS**[3]

7    While working as Lehigh's employee, Plaintiff alleges Lehigh's management routinely

8    discriminated against and harassed Plaintiff. Doc. 1-1 at 5:2-3.  Plaintiff's working habits were

9    constantly monitored by Plant Production Manager Joe Barrett ("Barrett"), and Plaintiff's

10   supervisor, Terry Moody ("Moody"), was directed by Barrett to discipline Plaintiff by issuing a

11   write-up. *Id*. at 5:4-7.  Derogatory racial remarks were also  made in the presence of Plaintiff. *Id*.

12   at 5:9-11.

13   In August 2011, an accident occurred involving a Lehigh truck. *Id*. at 5:16-18; *id*. at 9.

14   Lehigh apparently held Plaintiff responsible for the accident despite the fact that Plaintiff was not

15   the driver because Plaintiff was training the driver, but Plaintiff denies being a part of the

16   accident and also says he was not a qualified trainer within the meaning of the union contract. *Id*.

17   5:19-22.  As a result of the accident, Plaintiff was subjected to several drug tests – two at Lehigh

18   and one at Tehachapi Hospital – during which Plaintiff had no union representation. *Id*. at 5:24-

19   28.  Plaintiff states that the two tests done at Lehigh were negative. *Id*. at 5:25.

20   Plaintiff filed a grievance with USW after numerous calls and letters to Union President

21   Sean Pugh went unanswered. *Id*. at 6:1-4.  Plaintiff also filed complaints with the NLRB and the

22   EEOC. *Id*. at 6:4-5.  Moody also filed a grievance with USW on Plaintiff's behalf. *Id*. at 6:7; *id*.

23

24   _____

25   [2]  The court notes that Lehigh, while arguing for a stringent pleading standard as to
     Plaintiff's complaint, has left numerous "[citation]" placeholders in its motion instead of the
     citations themselves.

26

27   [3]  The facts alleged in the complaint are deemed as true for the purposes of this Rule
     12(b)(6) motion.

28                                         3

1   at 23.  Plaintiff claims there were problems with this grievance, perhaps caused by the union or

2   by Lehigh. *Id*. at 6:8-13.

3          A hearing involving Lehigh and the Union was held September 29, 2011, at which the

4   Union advised Lehigh's representative to reinstate his employment. *Id*. at 6:15-16.  The Union

5   representative at the hearing then told Plaintiff that Lehigh's representative did not want to

6   reinstate Plaintiff, but did want to know whether Plaintiff was interested in settling the matter. *Id*.

7   at 6:23-24.  Plaintiff provided a settlement request, but the request was not presented. *Id*. at 6:24-

8   27.  The Union representative informed Plaintiff that an arbitration would take place in May

9   2012, a date violating an unspecified contract's 25-day limit for holding arbitration. *Id*. at 6:26-

10  28.  Plaintiff further alleges that the Union attempted to cover up Lehigh's contract violation and

11  has failed to represent Plaintiff in the goal of Plaintiff's best interests. *Id*. at 7:1-4.

12         Plaintiff makes claims against Lehigh for defamation; wrongful termination and violation

13  of collective bargaining agreement, which Defendant infers arise under the Labor Management

14  Relations Act ("LMRA"); racial discrimination, which Defendant infers are brought under Title

15  VII of the Civil Rights Act of 1964; and age discrimination, which Defendant infers is brought

16  under the Age Discrimination in Employment Act ("ADEA").[4]

17

18                                   **DISCUSSION**

19

20  **A. *Plaintiff's LMRA claim against Lehigh***:  Normally, an employee bringing a breach of

21  contract claim against an employer under the LMRA must attempt to exhaust any grievance or

22  arbitration remedies provided in the collective bargaining agreement. *Del Costello v. Int'l Bhd. of*

23  *Teamsters*, 462 U.S. 151, 163 (1983); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985 (9th

24

25  _____

26        [4]  The court accepts Lehigh's characterization of the legal bases for Plaintiff's claims.  If
     Plaintiff wishes to state his claims based on other sources of law, he must do so in any amended
27   complaint.

28                                        4

Cir. 2007).[5]

Notwithstanding exhaustion of grievance or arbitration remedies, an employee may bring suit against an employer if he alleges (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation to the employee. *Del Costello*, 462 U.S. at 164-65;  *Vaca v. Sipes*, 386 U.S. 171, 185-86 (1967); *see also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976) ("The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures ... .").

Plaintiff alleges that Lehigh and/or the Union breached the collective bargaining agreement by failing to inform Plaintiff that he was a qualified trainer. Doc. 1-1 at 5:20-22. Plaintiff cites the contract as saying that "the company and union have to agree as to who should be a qualified trainer." *Id*.  This clause does not directly identify a duty of Lehigh to inform the employees of their status as qualified trainers.  Plaintiff is not required to attach the contract to which he refers, but Plaintiff must plead facts to support a showing that the company directly breached the clause (i.e., that it did not reach an agreement with the Union that Plaintiff should be a qualified trainer), or that a specific portion of the contract created the duty of Lehigh to inform employees of their status, which Lehigh breached.

A union breaches its duty to fairly represent its members when its conduct is "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190; *Beck v. United Food and Comm'l Workers Union Local 99*, 506 F.3d 874, 879 (9th Cir. 2007).  An allegation of discriminatory conduct by a union must plead facts to support a showing discrimination that was "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. &*

---

[5]  Plaintiff discusses the filing of a grievance in his complaint, and also describes a hearing between the Union and Lehigh. A Union representative told Plaintiff after the hearing that arbitration was being pursued.  The court does not have a copy of the collective bargaining agreement ("CBA") of which it may take notice, but these actions appear to be part of a company or union grievance procedure.  To continue with this action, the parties need to establish what grievance procedure, if any, the CBA establishes, and where Plaintiff's grievance stands in such a process.

5

*Motor Coach Employees v. Lockridge*, 403 U.S. 274, 301 (1971).  To allege bad faith on the part of the union requires a plaintiff to plead facts that support a showing of "fraud, deceitful action, or dishonest conduct on the part of the union." *Beck v. UFCW, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007); *Carr  v. Allied Waste Sys.*, 2011 U.S. Dist. LEXIS 101658 at *13 (N.D. Cal. Sept. 8, 2011).

Where a union acts with discretion, an allegation of arbitrary conduct must allege facts to support a showing that the conduct was "without a rational basis or explanation" *Marquez v. Screen Actors Guild*, 525 U.S. 33, 46 (U.S. 1998); *Carr*, 2011 U.S. Dist. LEXIS 101658 at *12-13.  The assessment of a grievance's merits and the decision whether to take it to arbitration is often within a union's discretion. *Vaca*, 386 U.S. at 191-92 ("[A] union does not breach its duty of fair representation ... merely because it settled the grievance short of arbitration" but " a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion.").  But *Vaca*'s addition of arbitrary union conduct to that which may breach the duty of fair representation represented a broadening of the doctrine, allowing an employee to show a breach without an element of bad faith or evil motive. *Robesky v. Qantas Empire Airways*, Ltd., 573 F.2d 1082, 1086 (9th Cir. 1978) (citing *Rentana v. Apartment Workers Local 14*, 453 F.2d 1018, 1023 n.8 (9th Cir. 1972)).  In *Robesky*, the Ninth Circuit vacated a judgment against an employee who brought a fair representation claim on the basis of her union's failure to inform her that it had decided not to take her grievance to arbitration.  The union later accepted a settlement offer from the employer, without the employee's knowledge, and the employee subsequently rejected the offer, believing arbitration was still open to her. *Id*. at 1087.  In vacating the judgment, the court reasoned that the union's omission, if deliberate, may have been rational as to the employer, but nonetheless remained irrational as to the employee because no justification for the harmful concealment was apparent. *Id*. at 1089.  Further, the court reasoned that the omission, even if unintentional, may have been made with reckless disregard to the employee's rights and may have been so unrelated to legitimate union interests as to be arbitrary. *Id*. at 1089-90.  The

1    Ninth Circuit further clarified the arbitrariness standard in *Galindo v. Stoody Co.*, 793 F.2d 1502,

2    1514 (1986), finding arbitrary conduct primarily in ministerial acts, as opposed to those within

3    union discretion, and in conduct that prejudices a strong interest of the employee.  In *Galindo*,

4    the court affirmed a judgment for the employee, Galindo, on a fair representation claim where the

5    union had failed to notify the employer of Galindo's status as a steward, which would have saved

6    him from being laid off. 793 F.2d at 1515.  The union's omission was arbitrary because the

7    notification required by the labor contract was a ministerial act not subject to discretion and the

8    union's failure to notify led to Galindo's dismissal and was thus prejudicial to his strong interest

9    in staying employed. *Id*. at 1514-15.

10         Plaintiff has attached to his complaint two charges he filed with the NLRB against the

11   Union.  The first charge, filed on September 6, 2011, alleged that the Union "has breached its

12   duty of fair representation by refusing to assist William Jones with his drug test as well as

13   refusing to file a grievance on his behalf regarding his suspension and termination due to

14   discriminatory reasons." Doc. 1-1 at 15.  The second charge, filed January 9, 2012, alleges that

15   the Union "has breached its duty of fair representation by willfully misinforming [Plaintiff] that

16   they have filed a grievance regarding his termination on his behalf, and were in the process of

17   taking it to arbitration." *Id*. at 20.  Plaintiff also alleges that he was not told that he was a

18   qualified trainer, in breach of the labor agreement requirement that "the company and union have

19   to agree as to who should be a qualified trainer." *Id*. at 5:20-22.  In addition to the allegation that

20   he had no representation from the union during the drug testing process and beyond, Plaintiff also

21   alleges that his attempts to file a grievance with the union were rebuffed and his calls and emails

22   to the Union were ignored. *Id*. at 5:27–6:4.

23         Plaintiff's complaint does not make clear how his not being informed of his status as a

24   qualified trainer was a breach of the labor agreement. The clause Plaintiff quotes states that the

25   Union and Lehigh must agree as to who is a qualified trainer, but does not indicate any specific

26   duty to notify the employees. In *Galindo*, the labor agreement stated that the union was required

27

28                                                      7

to notify the employer of a worker's steward status, and Galindo's claim was based on the union's failure to notify the employer of his steward status.  That provision of the labor contract stated exactly the duty that Galindo claimed was breached, and also made clear that the union's duty was ministerial and not discretionary.  Plaintiff need not rely on the collective bargaining agreement to allege a breach of the Union's duty of fair representation, but like Galindo, Plaintiff must allege facts that support a showing that the Union had a duty to inform him of his status, and that this duty was not a discretionary one.

In Plaintiff's discussion of his drug tests, Plaintiff inserts in parentheses "Violation of the Union Substance Abuse Contract."  Plaintiff does not make clear what right of his was protected by the contract or how it was violated.  Plaintiff's first charge filed with the NLRB alleges that the Union refused to assist Plaintiff with his drug test, and his complaint alleges that he was without Union representation during this process.  As discussed above, if Plaintiff can point to a provision of the collective bargaining agreement that requires the Union to assist an employee during a drug test and can allege facts to support a showing that this duty is ministerial and not discretionary, Plaintiff may state a successful claim against the Union of a breach of its duty of fair representation through arbitrary conduct.

Plaintiff must also clarify his allegations as to the Union's involvement in the grievance process.  Plaintiff's first charge with the NLRB states that the Union refused to file a grievance on his behalf; the second charge alleges that the Union breached its duty by "willfully misinforming [Plaintiff] that they have filed a grievance regarding his termination on his behalf, and were in the process of taking it to arbitration." Plaintiff's complaint describes difficulty with a grievance filed on Plaintiff's behalf by Terry Moody, but it is unclear exactly what Plaintiff is alleging. Doc. 1-1 at 6:7-13. Plaintiff also states that a hearing took place between the Union and Lehigh and that a settlement offer and arbitration were glancingly discussed, but it is not clear whether this was part of the grievance process or whether any conclusions or settlements were made as a result of these actions. *Id*. at 6:15-28.  In *Robesky*, the employee's claim was allowed

1 to stand where there were facts to support a showing that the union failed to inform her, either

2 intentionally and without justification or in reckless disregard for her rights, that it would not

3 pursue arbitration. 573 F.2d at 1089-90. Similarly, Plaintiff here may state a claim if he can

4 allege facts to support a showing that the Union's actions were made with reckless disregard to

5 his rights or that the Union's deliberate omissions lacked a rational justification.

6        Thus, Plaintiff has failed to state a claim under the LMRA, and Plaintiff's claim will be

7 dismissed without prejudice.

8 **B. *Plaintiff's defamation claim against Lehigh***: Under California law, "[t]he elements of a

9 defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5)

10 has a natural tendency to injure or causes special damage." *Wong v. Tai Jing*, 189 Cal. App. 4th

11 1354, 1369 (6th Dist. 2010) (citing *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007)).

12        As to the fourth element, California Civil Code § 47 defines privileged publications for

13 purposes of libel. Subsection (c) defines as privileged a publication that is made "[i]n a

14 communication, without malice, to a person interested therein, (1) by one who is also interested

15 ... ." Cal. Civ. Code § 47(c) (2012).  This qualified privilege generally covers an employer's

16 communication of the cause of an employee's discharge to other employees, when the employer

17 is seeking its own self-interest and is acting in good faith. *Deaile v. Gen. Tel. Co. of Cal.*, 40 Cal.

18 App. 3d 841, 849 (2d Dist. 1974); *see also Cuenca v. Safeway S.F. Employees Fed. Credit*

19 *Union*, 180 Cal. App. 3d 985, 995 (1986) ("Communications ... relating to the conduct of an

20 employee have been held to fall squarely within the qualified privilege for communications to

21 interested persons."). To state a claim for defamation where a qualified privilege applies, a

22 complaint "must contain affirmative allegations of malice in fact." Lundquist v. Reusser, 875

23 P.2d 1279, 1289 (Cal. 1994) (internal quotation marks and citation omitted).

24        Other than listing a claim for defamation, Plaintiff does not tie the claim to any alleged

25 facts in his complaint.  Plaintiff explains in his opposition to Lehigh's motion to dismiss that the

26 claim relates to his termination letter, which allegedly states that "termination was due to Mr.

27

28

Jones, driving company equipment and destroyed company property." Doc. 19 at 7 (internal

quotation marks omitted).  As discussed above, the court may not consider facts alleged for the

first time in Plaintiff's opposition in ruling on a motion to dismiss.  To state a claim for

defamation, Plaintiff must allege facts to support each of the above elements of a defamation

claim, including actual malice to overcome Lehigh's presumed qualified privilege.  Because

Plaintiff has thus failed to state a claim, Lehigh's motion to dismiss will be granted, without

prejudice, as to the defamation cause of action.

**C.  *Plaintiff's Title VII claim against Lehigh***:  Title VII of the Civil Rights Act of 1964 makes

it unlawful for employers:

> (1) to fail or refuse to hire or to discharge any individual, or
> otherwise to discriminate against any individual with respect to his
> compensation, terms, conditions, or privileges of employment,
> because of such individual's race, color, religion, sex, or national
> origin; or

> (2) to limit, segregate, or classify his employees or applicants for
> employment in any way which would deprive or tend to deprive
> any individual of employment opportunities or otherwise adversely
> affect his status as an employee, because of such individual's race,
> color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1), (2).  To establish a prima facie case of race discrimination, an

employee must show that: (1) he is a member of a protected class; (2) he was qualified for his

position; (3) he experienced an adverse employment action; and (4) similarly situated individuals

outside his protected class were treated more favorably, or other circumstances surrounding the

adverse employment action give rise to an inference of discrimination. *See*, *e.g.*, *McDonnell

Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Fonseca v. Sysco Food Services of Arizona,

Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).  At the pleading stage, however, the complaint "must

contain only 'a short and plain statement of the claim showing that the pleader is entitled to

relief,'" and need not establish all the elements of a prima facie case. *Swierkiewicz v. Sorema*,

534 U.S. 506, 508 (2002) (quoting Fed. R. Civ. P. 8(a)(2)); *see Twombly*, 550 U.S. at 569-70

(discussing *Swierkievicz*).  The complaint must still allege sufficient facts to make the claim of

10

1    discrimination plausible on its face. *Twombly*, 550 U.S. at 570.

2           At a minimum, Plaintiff must plead facts to support a showing that similarly situated

3    employees were treated differently than Plaintiff, and that racial animus was the origin of an

4    "adverse employment action" taken against Plaintiff.  *Hilber v. Int'l Lining Tech*, 2012 U.S. Dist.

5    LEXIS 69977 at *13 (N.D. Cal. May 18, 2012) (dismissing Title VII claim of racial

6    discrimination for failing to allege that similarly situated employees were treated differently); *Al-

7    Raheem v. Covenant Care*, 2012 U.S. Dist. LEXIS 80646 at * (E.D. Cal. June 11, 2012)

8    (dismissing Title VII claim of racial discrimination for failure to allege facts to support a causal

9    link between adverse employment action and discriminatory motive).  Adverse employment

10   actions may include any decision by an employer affecting "compensation, terms, conditions, or

11   privileges of employment." 42 U.S.C. § 2000e-2(a)(1); *see, e.g., Fonseca v. Sysco Food Servs. of

12   Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).  Any action negatively affecting the employee's

13   compensation may constitute an adverse employment action, and under some circumstances a

14   warning letter or negative review may also constitute an adverse action. *Fonseca*, 374 F.3d at

15   847.

16          Plaintiff alleges that Lehigh's management "routinely" discriminated against and harassed

17   Plaintiff, and that Plant Production Manager Joe Barrett followed Plaintiff and constantly viewed

18   Plaintiff's working habits. Doc. 1-1 at 5:2-5.[6]  Plaintiff also alleges that Barrett directed

19   Plaintiff's supervisor Moody to write Plaintiff up. *Id*. at 5:5-7.  Plaintiff describes racially

20   derogatory remarks made in his presence, including use of the racial epithet "nigger" and

21   Barrett's remark that he "'did not want a black man for his president.'" *Id*. at 5:9-11. Plaintiff

22   alleges that "[t]hese and other actions lead [sic] up to the date of August 19, 2011 when I was

23   accused of damaging company property and suspended and eventually terminated." *Id*. at 5:11-

24

25          ───────────────
                [6] Plaintiff does not specifically allege in his complaint that he is African-American, but
26   based on the allegations in Plaintiff's complaint, the court will assume he is for purposes of this
     order. Plaintiff must allege in any amended complaint that he is a member of a protected class
27   (e.g., African-American) to sustain a claim for discrimination.

28                                                    11

13.

Plaintiff's allegation that Barrett, a manager, used a racial epithet in Plaintiff's presence may be sufficient to show discriminatory intent by Lehigh. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 n.7 (9th Cir. 2006) ("[A] plaintiff could offer direct evidence of an employer's discriminatory intent, for example an employer's use of a racial epithet."); *Dawson v. Entek Int'l*, 630 F.3d 928 (9th Cir. 2011) (finding vicarious liability against employers for the acts of supervisors where the supervisor "'has the authority to demand obedience from an employee'") (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1119 n.13 (9th Cir. 2004)). Barrett also allegedly directed Plaintiff's supervisor to write up Plaintiff.  A write-up could constitute an adverse action. *Fonseca*, *supra*, at 847. Plaintiff, however, does not allege that he was in fact written up, but rather that he was simply warned to "be careful" by his supervisor. Because a discrimination claim must plead facts to support a showing that an adverse employment action was taken, this claim is insufficient.

Plaintiff alleges that the use of derogatory remarks and unnecessarily close scrutiny of his work habits "lead [sic] up" to his suspension and termination. Doc. 1-1 at 5:11-13.  This does not sufficiently allege a causal connection between the racial animus described in the first paragraph of Plaintiff's complaint and Plaintiff's suspension and termination.  Plaintiff implies that Lehigh's choice to administer a drug test was a violation of its collective bargaining agreement with the Union and linked to the discriminatory behavior, but Plaintiff has not pled facts in his complaint that make plausible a showing that Plaintiff was drug tested due to racial animus. Further, Plaintiff does not plead facts to indicate that a drug test in itself could constitute an adverse employment action.  Moreover, Plaintiff does not allege that he did not fail a drug test, and the grievance filed by Moody on Plaintiff's behalf acknowledges a "dirty" urine test. Doc 1-1 at 27.  "An employee is not protected by Title VII when he violates legitimate company rules, knowingly disobeys company orders, disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals." *Unt v. Aerospace Corp.*, 765 F.2d 1440,

1446 (9th Cir. 1985).  Therefore, a termination based on a positive drug test in breach of a legitimate company rule would not be compensable under Title VII.  Plaintiff has not yet pled facts that would make plausible a showing that Plaintiff did not violate a legitimate company rule or that a drug test in itself constitutes an adverse employment action.  Because of these missing links, Plaintiff has failed to allege the necessary causal link between Lehigh's alleged discrimination and Plaintiff's suspension or termination.

A plaintiff may also bring a Title VII claim by alleging a "hostile work environment." Such a claim "involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).  The elements of hostile work environment claim are (1) the plaintiff was subjected to verbal or physical conduct because of his race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2002).  To state a claim for hostile work environment, a plaintiff "must allege sufficient facts to state the elements of a hostile work environment claim." *Johnson v. Riverside Healthcare System*, 534 F.3d 1116, 1122 (9th Cir. 2008).

As to the third element, in considering whether the discriminatory conduct was "severe or pervasive," the Ninth Circuit looks to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Johnson*, 534 F.3d at 1122 (quoting *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000)) (internal quotation marks and citations omitted).  Although "mere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII," *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted), "[p]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an

13

1  unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his

2  subordinates." *McGinest*, 360 F.3d at 1116 (quoting *Rodgers v. Western-Southern Life Ins. Co.*,

3  12 F.3d 668, 675 (7th Cir. 1993)) (internal quotation marks omitted).  In *Johnson*, the Ninth

4  Circuit reversed the district court's dismissal of Johnson's hostile work environment claim based

5  on three relevant allegations: a 'serious act of discrimination' in which a supervising doctor

6  moved as if to strike Johnson and "screamed ... 'You fucking nigger – why did you do that to

7  me?'", *id*. at 1120, 1123 (internal quotation marks omitted); the rejection of an African-

8  American's residency application; and a nurse's repeated requests to Johnson in the operating

9  room to take out the trash, implying that he should be a maintenance man instead of a medical

10  resident. *Id*. at 1123.

11         Plaintiff alleges an instance in which Dave Backus (no title given) remarked on a work

12  assignment by saying, "[W]hat do we look like a bunch of niggers[?]" Doc 1-1 at 5:9-10.

13  Manager Barrett also remarked that he "did not want a black man for his president." Doc. 1-1 at

14  5:11.  Plaintiff does not allege that the remarks were directed at him, but such remarks are

15  discriminatory, and "racist attacks need not be directed at the complainant in order to create a

16  hostile ... environment." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th

17  Cir. 1998); *see also Johnson*, 534 F.3d at 1123.  Plaintiff also alleges that Barrett followed

18  Plaintiff, "constantly viewing his working habits." Doc. 1-1 at 5:5.  The court in *Johnson*

19  accepted the plaintiff's inference of discrimination where Johnson alleged that a nurse's frequent

20  comments in the operating room that he should take out the trash were racially derogatory

21  because the comment could be a "code word or phrase" implying that Johnson should be a

22  maintenance man due to his race. 534 F.3d at 1123. The court rejected Johnson's inference of

23  discrimination where he alleged that a comment that a security dog was "more popular" with the

24  nurses than Johnson implied that "an African American physician ... was lower on the Hospital's

25  social scale than a dog." *Id*. at 1123 n.4. Plaintiff's allegation that his close monitoring, by a

26  manager who also made a derogatory racial remark, was racially motivated is closer to the

27

28                                                14

allegation rejected in *Johnson*.  In *Johnson*, the fact that the nurse's comments included language that could constitute a "code word or phrase" for a racial attack led the court to find Johnson's inference plausible, but the dog remark was an "otherwise race-neutral insult" that might be "merely consistent with" discriminatory intent, but could not on its own make the allegation plausible. *Id*. at 1123 n.4 (quoting *Twombly*, 550 U.S. at 1966).  There is nothing inherently racially-charged about close monitoring of an employee, nor does Plaintiff allege any facts to claim that such behavior holds a symbolic racist meaning.  While Barrett's monitoring of Plaintiff may be consistent with discrimination, he does not plead sufficient facts to make the allegation plausible.  Plaintiff's allegations of racial discrimination, therefore, amount to two derogatory remarks made in his presence.  While the remarks are demeaning and inappropriate, they are not comparable to the successful allegations in *Johnson*, and their isolated nature makes them insufficient to state a claim of a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment.").

**D.  *Plaintiff's ADEA claim against Lehigh***:  The Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. states that "[i]t shall be unlawful for an employer –

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
> (3) to reduce the wage rate of any employee in order to comply with this Act.

29 U.S.C. § 623(a).  The elements of a prima facie case for age discrimination are (1) the plaintiff is in the age group protected by the ADEA; (2) he was discharged or demoted; (3) at the time of his discharge or demotion, he was performing his job at a level that met his employer's legitimate expectations; and (4) following his discharge or demotion he was replaced by someone of

comparable qualifications outside the protected class. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310 (1996).  As for Title VII claims, a plaintiff need not state a prima facie case at the pleading stage, but the complaint must contain facts to make the claim plausible on its face. *Swierkiewicz*, 534 U.S. at 508; *Twombly*, 550 U.S. at 569-70.

Plaintiff did not allege his age in his complaint, he pled no facts pertaining to discrimination based on his age, and he made no mention of who replaced him after his termination.  Plaintiff has therefore not stated a claim under the ADEA and Lehigh's motion to dismiss will be granted, without prejudice, as to the ADEA claims.

## CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motions to dismiss are GRANTED without prejudice.  Plaintiff is given leave to amend his complaint within 30 days of this Order's date of service.

IT IS SO ORDERED.

Dated:  ___July 18, 2012___

_____
CHIEF UNITED STATES DISTRICT JUDGE

16