1
2
3
4
5
6
7       IN THE UNITED STATES DISTRICT COURT FOR THE
8                EASTERN DISTRICT OF CALIFORNIA
9
10   **WILLIAM RAY JONES, SR.,**            )      **1:12-cv-0633 AWI JLT**
                                            )
11               **Plaintiff,**             )
                                            )      **MEMORANDUM OPINION**
12        **v.**                            )      **AND ORDER ON**
                                            )      **DEFENDANTS' MOTION TO**
13   **LEHIGH SOUTHWEST CEMENT**            )      **DISMISS PLAINTIFF'S FIRST**
     **COMPANY, INC., a California**         )      **AMENDED COMPLAINT**
14   **corporation; and DOES 1-10,**        )
                                            )      **Doc. # 31**
15               **Defendants.**            )
     _____       )
16
17
18       This an action for wrongful termination by plaintiff William Ray Jones, Sr. ("Plaintiff")
19   who was employed by defendant Lehigh Southwest Cement ("Defendant") and was terminated
20   by Defendant on or about August 19, 2012, following a positive test for prohibited drugs.
21   Plaintiff's original complaint was dismissed by the court's order filed on July 18, 2012, granting
22   Defendant's motion to dismiss (hereinafter, the "July 18 Order").  The court granted leave to
23   amend and Plaintiff filed a document titled "Motion to Amend Complaint: Motion to Amend
24   Original Complaint" which the court has deemed to be Plaintiff's First Amended Complaint
25   ("FAC").  Currently before the court is Defendant's motion to dismiss Plaintiff's FAC.
26   Jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.
27              **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**
28       The basic factual allegations set forth in Plaintiff's FAC appear little changed from those

alleged in the original complaint.  Plaintiff is a 55 year-old African American male who was

employed by Defendant for approximately four and one-half years as a laborer in the company's

facility in Tehachapi, California until his termination in August of 2011.  Plaintiff alleges that

during his time as an employee for Defendant, he was "subjected to emotional abuses,

disparaging remarks and treatment that was different from his white co-workers."  Doc. # 29 at 2:

9-10.  In particular, Plaintiff alleges he was assigned to perform duties by himself on the night

shift that would have been assigned to two workers on the day shift where there were no African

American employees.  Plaintiff alleges he was singled out for scrutiny on the job and that the

plant manager that "would constantly request[. . .] write-ups to be placed in [Plaintiff's]

personnel file by [Plaintiff's] Supervisor, Terry Moody, for no reason other than being an

African-American Employee."  Doc. # 29 at 2:24-3:1.

On August 9, 2012, Plaintiff was assigned a younger White male how to operate a

vacuum truck.  Plaintiff's FAC alleges the younger employee told Plaintiff the younger employee

could operate the vacuum truck by himself, so Plaintiff turned away and set about his other

duties.  Shortly thereafter Plaintiff notice a crowd gathering around an apparent collision between

the vacuum truck and a pallet holding a transmission.  The fender of the truck was dented.  Since

Plaintiff did not witness the accident, he left it to those who had witnessed to make the required

report.  After replacing the transmission on the pallet, Plaintiff went on break.  When Plaintiff

returned from break he was informed that he would be required submit to a urine test for

prohibited drugs.  Plaintiff alleges that two screening tests were performed on site without the

presence of a union representative in violation of Defendant's Collective Bargaining Agreement

("CBA") and Joint Drug Policy ("Drug Policy") with the Steelworkers Union.  Plaintiff alleges

both screening tests were negative.

Plaintiff alleges that, following the two negative screening tests for the presence of

prohibited drugs, he was transported to Tehachapi Valley District Hospital for more

comprehensive drug testing; again without accompaniment of a union representative and in

2

violation of the CBA.  Plaintiff contends that both Defendant and representatives of the

Steelworkers Union were in violation of the CBA and the Drug Policy by agreeing that Plaintiff

should be transported without representation for further testing at the hospital.  Plaintiff also

alleges both the Union and Defendant failed to undertake an investigation of the incident and,

instead, used the incident as a pretext to secure unwarranted drug testing on Plaintiff in violation

of the CBA and in violation of Defendant's own drug policy.

Although the results of the drug test or tests performed through the Hospital are not set

forth in the FAC, the results of the test apparently formed part of the basis for Defendant's

decision to terminate Plaintiff's employment.  In the Termination Letter sent by Defendant to

Plaintiff, Defendant lists violation of three provisions of Defendant's policies, including violation

of the policy prohibiting "[p]ossession, sale, or use of illegal drugs while on Company time or

premises or *reporting to work under the influence of illegal drugs*, (which was confirmed to be

the case by the required testing protocol)."  Exhib. "B" to Doc. 29, p. 15.  In addition, the

Termination Letter cited "damage, destruction or misuse of company property" and failure to

report an accident as reasons for termination.  Id.

Plaintiff's FAC is ambiguous with regard to what procedure was followed from the date

of the alleged infractions to the date of Plaintiff's termination.  The termination letter refers to

"the Company Policy HR-2-004 Progressive Discipline which you [i.e. Plaintiff] acknowledged

receiving and understanding on May 11, 2010."  Id.  Plaintiff's FAC alludes to proceedings at

which he was represented by union representative and at which he put forward his contention that

the drug test results were invalid due to the failure to maintain a proper chain of custody.  In

particular, Plaintiff mentions a "hearing held by the union and [Defendant in] September 2011."

Plaintiff alleges that at the hearing "[Defendant] was advised since they did not establish chain of

custody, [Plaintiff] was entitled to be reinstated with [Defendant].  However, the union refuse

[sic] to advise [Defendant] that they were in also breached [sic] their Collective Bargaining

Agreement."  Doc. # 29 at 9:20-23.  Plaintiff's FAC does not elaborate on the nature of these

proceedings; however the FAC does not appear to allege that the procedure referred to as "Progressive Discipline" in the Termination Letter was either not followed or was in some way deficient.

Plaintiff's makes a number of allegations with regard to a "grievance" that he requested that his union file on his behalf after the Termination Letter was received. Plaintiff alleges that no grievance was ever properly filed on his behalf. Confusingly, Plaintiff alleges that *after* the termination:

> [Plaintiff] requested that his union file a grievance on his behalf on a variety of occasions and the union refuse [sic] to answer his calls, emails and other means of communications. [Plaintiff] therefore filed a complaint with the National Labor Relations Board regarding the union's failure in their duties. The NLRB sent letters to the union advising that charges would be filed if they did not fulfil their fiduciary duties. [Plaintiff] states that the union never filed a formal grievance on his behalf. [Plaintiff's] union representative Bill Locke advised the [NLRB] that a grievance was filed, however, the grievance that he was speaking of was a grievance file [sic] by Terry Moody, Supervisor at Lehigh Southwest Cement. The grievance reads that [Plaintiff] was terminated, "without just cause" then it reads a dirty urine test. The grievance [which was] dated September 6, 2011, was back dated (forged) because the NLRB was still demanding that the union file grievance as of October and November 2011. According [to] the United Steelworkers Grievance Procedures, any formal grievance must have the union representative signature [Plaintiff's] signature and his statement must be included on the grievance. [Plaintiff's] grievance was filed with his statement and signature by fax to the Albuquerque, New Mexico, district office for the Local 12-52. [Plaintiff] never informed the union that he was taking any medications and he never spoke to any union representative because they would not take his calls, emails.

Doc. # 29 at 8:15-9:7. The foregoing narrative appears to be the basis for Plaintiff's contention that his union failed in their "duty of fair representation." For purposes of this decision, the court will infer that the "grievance" that is the subject of above-quoted narrative is a grievance that was separate and apart from other proceedings that were conducted in connection with Defendant's "progressive disciplinary" procedure that culminated in Plaintiff's termination. If this inference is incorrect, it will be up to Plaintiff to further amend his complaint to make it unambiguously clear what proceedings did take place, with whom, for what purpose, and to what effect.

This action was commenced in the Kern County Superior Court on February 23, 2012. The action was removed by Defendants on April 20, 2012. As was the case with Plaintiff's

4

original complaint, the FAC does not clearly delineate claims for relief but rather infers claims for relief based on the factual narrative.  There is little doubt that Plaintiff's FAC alleges workplace discrimination in violation of Section 703(a)(1) of Title VII; 42 U.S.C. § 2000e-2(a)(1).  As the court's July 18 Order noted, in addition to a claim for workplace discrimination based on race, Defendant has inferred claims pursuant to the Labor Management Relations Act ("LMRA"), age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA") and defamation, presumably under California common law.  Doc.# 27 at 4:12-16.  In the July 18 Order, the court accepted Defendant's characterization of Plaintiff's claims with the admonition that if claims on other legal grounds was Plaintiff's intent, the complaint would have to be amended to make such claims express.

Plaintiff's FAC does not allege anything that could reasonably be understood as a new claim that was not inferred by Defendants from the allegations set forth in the original complaint.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do"). The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

## DISCUSSION

For purposes of this discussion, the court will again accept the interpretation of the claims set forth in Plaintiff's FAC as reflected in Defendant's motion to dismiss. Defendants have observed that Plaintiff's FAC differs from the original complaint in that Plaintiff has interspersed citations to legal authority throughout the narrative, however the facts set forth in the FAC are not substantially different from those that were alleged in the original complaint. Defendant therefore has interpreted Plaintiff's FAC to allege the same claims for relief that were alleged in the original complaint – racial and age discrimination in violation of Title VII, breach of contract under the Labor Management Relations Act, and defamation under California common law.

In analyzing and reaching a conclusion as to the sufficiency of each of the above-mentioned claims by Plaintiff, the court notes that the applicable legal standards for the determination of each of Plaintiff's clams have been extensively set forth in the court's July 11 Order. In the interests of conservation of judicial resources, a shortened version of the applicable legal standards will be used in this opinion. The more extensive exposition of the legal standards set forth in the July 11 Order is incorporated here by reference.

**I. Racial Discrimination Under Title VII**

Section 703(a)(1) of Title VII provides that it is "an unlawful employment practice" for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). "At the motion to dismiss stage, [the plaintiff] need not support [her] allegations with evidence, but must allege sufficient facts to state the elements of a hostile work environment [or retaliation] claim." Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1122 (9th Cir. 2008). In general, claims asserted pursuant to Title VII are guided by the same legal principles that apply to claims asserted pursuant to 42 U.S.C. § 1981. Manatt v. Bank of America, 339 F.3d 792, 797 (9th Cir. 2003). There are various legal pathways that are invoked to reach the conclusion of unlawful discrimination under Title VII. While Plaintiff's FAC does not specify the particular theory of discrimination, the facts alleged hint fairly strongly at three theories; racial discrimination, hostile work environment and retaliation.

### *A. Discrimination - Disparate Treatment on Racial Grounds*

As the July 11 Order stated:

> To establish a prima facie case of race discrimination, an employee must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action gives rise to an inference of discrimination.

Doc. # 27 at 10:16-20 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004)). The July 11 Order acknowledged that Plaintiff's complaint set forth facts sufficient to demonstrate the first three of the above-listed elements of a discrimination claim. The July 11 order concluded that Plaintiff's complaint did not allege facts sufficient to show that either the work conditions on the night shift – which Plaintiff claims were more hazardous and strenuous that those on the day shift – or the testing for prohibited drugs – which Plaintiff alleges was "pretextual" – were the result of racial animus. The facts alleged in Plaintiff's FAC are essentially the same as those that

were alleged and found deficient in the original complaint.  Plaintiff's FAC has not cured the pleading deficiency because there remains no factual basis to find that individuals outside his protected class were treated differently.  Essentially, Plaintiff is burdened to plead facts to show that a non-African American would not have been scrutinized to the same level, would not have been subjected to drug testing as a result of the accident and/or would not have been placed on the night shift with the same job conditions as Plaintiff.

While the court can accept for the purposes of this analysis that Plaintiff was subject to unfair treatment and was "railroaded" into termination, Plaintiff is without recourse under Title VII unless he can allege facts sufficient to show that the reason for his treatment was the fact that he is African American.  Except for a couple of statements by employees who do not appear to be in a position to influence Plaintiff's working conditions, there is nothing in the facts to tie Plaintiff's work experience to racial animus on the part of company officials or managers who had actual influence over Plaintiff's work environment.  The court must conclude that, as with the original complaint, Plaintiff's FAC fails to state a claim for which relief can be granted with regard to a Title VII claim for discrimination.

### B.  Hostile Work Environment

The terms "hostile work environment" and "harassment" are used interchangeably in that the elements of a claim under either label are the same.  The elements are (1) the plaintiff "'was subjected to verbal or physical conduct' because of her race, (2) 'the conduct was unwelcome,' and (3) 'the conduct was sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create and abusive work environment.' [Citation.]" Manatt, 339 F.3d at 797 (reciting elements for hostile work environment claim and quoting Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 202)); Martinez v. Marin Sanitary Services, 349 F.Supp.2d 1234, 1251 (N.D. Cal. 2004) (reciting same elements for claim of racial harassment).

While Plaintiff's FAC alleges certain work conditions that applied to him and not to others, there is nothing in the FAC to establish that the difference in treatment had its origin in

racial animus.  There is no doubt that Plaintiff did overhear comments that were understandably

deeply subjectively offensive to him.  However, there is no indication that the few comments that

were document in the FAC were made by policy-setters or that the sentiments reflected in those

comments guided the company's decision-making with regard to African Americans generally or

with regard to Plaintiff as an individual.  Further, as pointed out in the court's July 18 Order, the

relatively short list of racially derogatory statements Plaintiff has been subjected to were not

sufficient in terms of their pervasiveness to show that there was any substantial effect on the

work environment.  The court concludes that Plaintiff's FAC does not adequately state a claim

for violation of Title VII on the grounds of hostile work environment.

### C. Retaliation

To state a claim for retaliation under Title VII, a plaintiff "must establish that; (1) he

engaged in a protected activity, such as the filing of a complaint alleging racial discrimination,

(2) the [defendant] subjected him to an adverse employment action, and (3) a causal link exists

between the protected activity and the adverse action." Manatt 339 F.3d at 800 (internal citations

and footnotes omitted).  The only portion of the FAC that appears to suggest the elements of a

claim of retaliation alleges:

> [Plaintiff] being a fifty-year-old African-American, employed for four-and-one-
> half years with [Defendant], with excellent working relationships and a personnel
> file without any write-ups, warnings or any problematic issues while employed
> was the next employee in line for an open position in maintenance department;
> however, that position was given to an employee by the name of John (last name
> unknown) a younger white male employee.  A question was proposed to Union
> President Shawn Pugh as to why the position was not placed up for bidding in
> accordance with the Collectiv3e Bargaining Agreement (Article No. 9 - Seniority
> 9.10 Job Bidding).  His question was n3ever answered and it [sic] almost a week
> later that the pretext of driving the vacuum truck surfaced.

Doc. # 29 at 4:9-18.

While a "challenge" to a promotion or transfer that is contrary to the terms of the CBA

would certainly be a protected activity, there is no evidence that Plaintiff made or was connected

with such a challenge.  If, as the FAC suggests, Plaintiff merely asked the Union President a

question, that would not rise to the level of "protected activity" for purposes of a claim under

9

Title VII because there is no indication the "question" was ultimately directed to Defendant.  In

terms of causation, Plaintiff's claim fails to allege a connection between a question (or challenge)

being proposed to the Union President and Defendant's treatment of Plaintiff.  If the  "question"

did amount to a challenge of Defendant's action, how did Defendant know that there was a

challenge and how did Defendant know that the challenge originated from Plaintiff, if indeed it

did?  In the absence of some evidence of a causal link between the protected activity and the

adverse employment action against Plaintiff, a claim of retaliation cannot be sustained.

The court concludes that Plaintiff has failed to state a claim of discrimination under Title

VII under any theory that might be applicable in light of the facts alleged in Plaintiff's FAC.

**II.  Age Discrimination Under ADEA**

The court's July 11 Order noted that the "elements of a prima facie case for age

discrimination are (1) the plaintiff is in the age group protected by the ADEA; (2) he was

discharged or demoted; (3) at the time of his discharge or demotion, he was performing his job at

a level that met his employer's legitimate expectations; and (4) following his discharge or

demotion he was replaced by someone of comparable qualifications outside the protected class."

The July 11 Order dismissed Plaintiff's ADEA claim noting that Plaintiff had not alleged his age

or the age of the person that replaced him.  In his FAC, Plaintiff alleges his age – 55 – but again

does not allege the age of the individual who replaced him.  In addition, while Plaintiff alleges

his personnel file was free of any negative reports or comments, he does not allege that the drug

test for which he was terminated was erroneous, only that it lacked a proper chain of custody.  In

view of Defendant's strict policy regarding drug use or impairment, Plaintiff cannot show that he

met the employer's reasonable expectations so long as he cannot, or does not, allege he was drug

free at the time of the incident in question.

The court concludes that the pleading deficiencies noted in the court's July 11 Order with

regard his ADEA claim remain in his FAC.  Plaintiff's claim for age discrimination under the

ADEA will therefore be dismissed.

**III.  Breach of Contract Under Labor Management Relations Act**

At the outset it is important to be clear as to what the court interprets Plaintiff to have alleged with respect to his LMRA claim.  While Plaintiff's FAC alleges a number of instances where Defendant breached the CBA, the only reference that the court can find to the actual filing of a grievance occurred *after* Plaintiff was terminated.  Doc. # 29 at 8:14-15.  Plaintiff's FAC appends a copy of what is described as the "Original Grievance" which is provided at Doc. Page 17 of Doc. # 29.  The Original Grievance is dated August 30, 2011.  Plaintiff's Termination Letter specified that his termination date was August 19, 2011.  The Original Grievance indicates that the subject of Plaintiff's grievance incorporated Plaintiff's allegation that he did not witness the accident and that he consequently had no duty to report and incorporates the allegation that Plaintiff was subjected to drug testing without union representation.  The court also notes that another grievance was apparently presented on behalf of Plaintiff by a person who is alleged by Plaintiff to be a supervisor by the name of Terry Moody.  The signature on the second grievance is not legible but appears not to be that of Plaintiff.

As the court noted in its July 11 Order, an employee seeking to sue for the breach of a CBA is generally required to exhaust all remedies provided by the agreement.  Del Costello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163 (1983); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 985 (9 Cir. 2007).  The exhaustion requirement is waived, however, if an employee alleges that (1) the employer breached the CBA and (2) that the union breached its duty of fair representation to the employee.  Del Costello, 462 U.S. at 164-165; Vaca v. Sipes, 386 U.S. 171, 185-186 (1967).  Plaintiff's ability to bring this claim in court without having exhausted the procedure provided by the CBA rests on the allegation that Plaintiff contacted the Union on numerous occasions seeking to get the union to put forward his grievance without any result or response by the Union.

Plaintiff's FAC appends a copy of the CBA that was in force at the time relevant to this action.  Article 14 of that agreement sets forth the grievance procedure.  Significantly, the

11

1 | grievance procedure provides that the procedure is available to address "any differences [that
2 | may] arise as to the meaning or application of the provisions of this Agreement."  Doc. # 29 at
3 | 59, ¶14.11.  The grievance procedure does not suggest that it is applicable to questions of
4 | progressive discipline or other matters having directly to do with the possible termination of an
5 | employee.  As previously noted, the Termination Letter referenced "Company Policy HR -2-004,
6 | Progressive Discipline" as the authority underpinning the decision to terminate Plaintiff.  The
7 | Progressive Discipline policy is not contained or referenced in the CBA.  The totality of the
8 | information presented in Plaintiff's FAC suggests strongly that matters pertaining to employee
9 | disciplinary actions are properly handled to according to the Progressive Discipline Policy and
10 | not according to the Grievance procedure.  In addition, although Plaintiff does not elaborate on
11 | the content or purpose of the "hearing" or "hearings" that he attended with union representation,
12 | the inference is that those proceedings were part of the Progressive Discipline Policy and that
13 | Plaintiff was represented by one or more Union officials during those proceedings.

14 |      A union breaches its duty to fairly represent its members when its conduct is "arbitrary,
15 | discriminatory, or in bad faith."  Vaca, 386 U.S. at 190; Beck v. United Food and Comm'l
16 | Workers Union Local 99, 506 F.3d 874, 878 (9th Cir. 2007).  While a union is bound to represent
17 | a member where representation is appropriate, it does not violate its duty where the requested
18 | representation is pointless, futile, or contrary to the governing labor agreement.  It appears to the
19 | court that what Plaintiff was seeking to grieve were the facts or procedures that underpinned his
20 | termination.  In light of all the facts alleged, the court cannot infer that the Union's refusal to
21 | carry Plaintiff's grievance forward constituted a failure to provide fair representation unless
22 | Plaintiff can allege some facts to show that the grievance Plaintiff sought was authorized by the
23 | CBA and was not an attempt to circumvent the Progressive Discipline Policy.

24 |      The court finds that Plaintiff has failed to plead facts sufficient to show that the union
25 | failed to provide Plaintiff fair representation or that his claims under the agreement have been
26 | exhausted.  The court therefore lacks jurisdiction over claims of Defendant's alleged violation of
27 |
28 |

1   the CBA.

2   **IV.  Defamation**

3       As previously noted in the court's July 11 Order, a plaintiff alleging the tort of

4   defamation must allege facts sufficient to show there was an  "intentional publication of a

5   statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes

6   special damage." Raghavan v. Boeing Co., 133 Cal.App.4th 1120, 1132 (2 Dist. 2005).

7   "Publication [in the context of defamation] means communication to some third person who

8   understands the defamatory meaning of the statement and its application to the person to whom

9   reference is made."  Id.

10       When the court read a claim for defamation into Plaintiff's original complaint, it

11   exercised the maximum extent of its ability to construe a pleading in favor of a *pro se* plaintiff.

12   The court notes that defamation was not checked as one of the claims pled on the Civil Case

13   Cover Sheet and the only reference to a defamation claim in the body of the original complaint

14   was the use of the word "libelous" to describe Plaintiff's Termination Letter.  In granting

15   Defendant's motion to dismiss what the court construed as a defamation claim, the court noted

16   that Plaintiff failed to "tie the claim [for defamation] to any alleged facts in the complaint."  Doc.

17   # 27 at 24-25.  Plaintiff's FAC is equally devoid of facts relating to any possible claim for

18   defamation.

19       Presuming that the Plaintiff's Termination Letter is the alleged defamatory instrument,

20   Plaintiff's FAC fails to allege any "publication" of the Letter to any third person or entity.

21   Plaintiff alleges that "[r]ather than lie to potential employers [Plaintiff] has stated the truth; that

22   he was terminated wrongfully by his former employer."  Doc. # 29 at 10:18-19.  Plaintiff's

23   disclosure of the circumstances of his separation from Defendant's employment does not

24   constitute "publication" by Defendant.  In addition, Plaintiff's FAC does not allege facts to show

25   that the Termination Letter contained any false statements.  Although there is some discrepancy

26   as to the numbering of the Rules of Conduct cited in the Letter, there is no question that the

27

28                         13

1  reasons cited in the Letter were the reasons for Plaintiff's termination.

2       While Plaintiff vigorously disputes the *validity* of allegation that he violated the cited

3  Rules of Conduct, there is no question that the Termination Letter truthfully states the reasons for

4  Plaintiff's termination.  In addition, Plaintiff has not alleged any facts that would tend to show

5  that, regardless of Plaintiff's allegations concerning the randomness of the test for prohibited

6  drugs, that he was in fact not in violation of the company policy of being under the influence of

7  prohibited drugs at the time of the incident that lead to his termination.  Basically, Plaintiff's

8  FAC, to the extent there is any intent to allege a claim for defamation, seeks to elevate a dispute

9  as to the *validity* of the reasons for his termination into a claim that Defendants were deliberately

10  *false* in listing those reasons as the reasons for his termination.

11       The court concludes that Plaintiff's FAC fails to state a claim for defamation for which

12  relief can be granted.  Further, the court concludes that the facts of this action are fundamentally

13  incompatible with a claim for defamation inasmuch as it improperly seeks to litigate in the

14  district court the validity of allegations of misconduct that are properly considered in the forum

15  that is provided by agreement of the parties to review disciplinary actions including termination.

16  Leave to amend the claim for defamation will therefore be denied.

17  **V. Leave to Amend**

18       "If a complaint is dismissed for failure to state a claim, leave to amend should be granted

19  unless the court determines that the allegation of other facts consistent with the challenged

20  pleading could not possibly cure the deficiency."  Schreiber Distributing Co. v. Serv-Well

21  Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).   The court has tried once to provide

22  Plaintiff with information regarding basic pleading requirements and will not repeat those here

23  except to note that Plaintiff has not served his own interest by persisting in the same sort of

24  narrative that leaves the court and Defendant guessing as to what claims are being alleged.

25  Because the court cannot determine that further amendment would not cure deficiencies in

26  Plaintiff's Title VII claims, and because the court cannot determine from the material provided

27

28                               14

that Plaintiff is not permitted to submit his termination to the grievance process, the court will allow *one* further amendment of the complaint.  Plaintiff is cautioned, however, that in any further amendment of the complaint, Plaintiff must clearly identify the claim for relief that he is alleging, provide the legal elements of the claim and allege facts sufficient to satisfy those elements.  The court is unwilling to make any further inferences with respect to Plaintiff's claims.


THEREFORE, for the reasons discussed above, it is hereby ORDERED that Defendant's motion to dismiss Plaintiff's First Amended Complaint in its entirety is GRANTED.  To the extent Plaintiff's FAC alleges a claim for defamation, that claim is dismissed WITH PREJUDICE.  Leave to amend is hereby GRANTED with regard to all other claims.  Any amended complaint shall be filed and served not later than twenty-one (21) days from the date of service of this order.  Should Plaintiff not file any amended complaint within the time period allotted, Defendant shall so notify the court and move for dismissal of the action and entry of judgment.


IT IS SO ORDERED.

Dated:    November 27, 2012

_____
UNITED STATES DISTRICT JUDGE