1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM RAY JONES, SR., | ) | 1:12-cv-0633  AWI JLT |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER ON |
| v. | ) | DEFENDANT'S MOTION TO |
| | ) | DISMISS PLAINTIFF'S |
| LEHIGH SOUTHWEST CEMENT | ) | SECOND AMENDED |
| COMPANY, INC., a California | ) | COMPLAINT |
| Corporation; and DOES 1-50, | ) | |
| | ) | Doc. # 46 |
| Defendant. | ) | |
| | ) | |

        This is an action for wrongful termination by plaintiff William Ray Jones, Sr.

("Plaintiff") who was employed by defendant Lehigh Southwest Cement ("Defendant") and

was terminated by Defendant on or about August 19, 2012, following a positive test for

prohibited drugs.  Plaintiff's original complaint was dismissed by the court's order filed on

July 18, 2012.  Doc. # 27.  On August 20, 2012, the Plaintiff filed a pleading that was

deemed to be his First Amended Complaint ("FAC").  Defendant's motion to dismiss

Plaintiff's FAC was granted by order of the court on November 27, 2012.  Doc. # 42.

Currently before the court is Defendant's motion to dismiss Plaintiff's Second Amended

Complaint ("SAC").  For the reasons that follow, the court will grant in part and deny in part

Defendant's motion to dismiss.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

        The general factual background of this action has been set forth at some length in the

court's prior orders and need not be repeated.  What follows here is a somewhat shortened version focusing on facts that are central to Plaintiff's claims.  At the time of the events alleged in the SAC, Plaintiff was a 55-year old African-American male who was employed by Defendant as a laborer.  The terms and conditions of Plaintiff's employment were set forth in a Collective Bargaining Agreement ("CBA") between Defendant and the United Steelworkers Union ("Union"). Plaintiff alleges in the SAC, as in prior complaints, that over the course of his employment he was subject to some level of racially insensitive remarks by co-workers and was subjected to more demanding working conditions than his non-African-American co-workers and was passed up for promotion in favor of younger, White employees.  Plaintiff worked for Defendant for about four and one-half years prior to his termination.  Plaintiff alleges that he complained through his Union about the disparate treatment he experienced, including complaints that he was not allowed to bid for other jobs when they became available, but to no avail.

On August 9, 2011, Plaintiff was directed to instruct a younger, White worker on the operation of a vacuum truck.  The other worker said he knew how to use the truck and Plaintiff went about his other tasks.  The younger White operator of the vacuum truck backed the truck into a pallet causing damage to the truck (hereinafter, the "Accident").  Plaintiff was ordered to undergo tests for the presence of controlled substances.  Plaintiff alleges a number of facts pertaining to the drug testing to which he was subjected.  Principally, Plaintiff alleges he was not involved in the Accident and, as a consequence, there was no reason that he should have been tested and the accident was used as pretext for obtaining a "random" drug test.  Plaintiff was required to undergo both preliminary testing at the work site, the results of which are alleged to have been negative.  Plaintiff was also required to undergo confirmatory testing at the local hospital.  In addition, Plaintiff alleges for the first time that he was the *only* employee subjected to drug testing in the wake of the Accident, or at least that he was the only employee required to undergo more extensive testing off-site.  Plaintiff also alleges

2

irregularities in the testing procedure including failure to maintain a chain of custody of the sample(s) and failure to secure union oversight pursuant to the negotiated Substance Abuse Agreement between Defendant and the Steelworkers' Union (the "Agreement").

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

**ANALYSIS**

Plaintiff continues to represent himself *in pro per*.  While it is not the court's intention to disparage Plaintiff's writing, Plaintiff's evident lack of familiarity with the norms of pleading challenges the limits to which the court can go to construe the pleadings in his favor.  See Franklin v. Murphy, 745 F.2d 1221, 1235 (9th Cir. 1984) (pleadings of a pro se plaintiff must be construed liberally by the court).  In particular, the court notes that Plaintiff's SAC is not styled so much as a stand-alone complaint as it is a narrative with interspersed quotes from case authority and with references to prior decisions of the court. Plaintiff's well-meaning attempt to allege separate claims for relief based on distinct legal theories of recovery is more confusing than helpful.  However, when the court considers the information contained in Plaintiff's prior complaints, along with his opposition to Defendant's motion to dismiss, a set of facts can be derived that the court feels is sufficient to make a determination whether Plaintiff has adequately stated any claim upon which relief can be granted.  The court is also of the opinion that further amendment of the pleadings is not likely to improve matters.  Thus, rather than require another amendment of the complaint, the court will base the decision that follows primarily on the SAC, but will also refer to Plaintiff's prior pleadings to the extent doing so clarifies the current complaint without introducing contradictory material.

**I. Title VII – Disparate Treatment**

Prior orders of the court have identified the elements of a claim for discrimination on the theory of disparate treatment as follows:

> To establish a prima facie case of race discrimination, an employee must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or

4

other circumstances surrounding the adverse employment action gives rise to
an inference of discrimination.

Doc. # 27 at 10:16-20 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973);

Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004)).  In prior

opinions, the court has noted that the first three of the elements have been satisfied by each of

Plaintiff's prior pleadings, but the last element remained unsatisfied up to and including

Plaintiff's First Amended Complaint.  See Doc. # 42 at 7:16-8:15 (noting that the original

complaint failed to adequately allege treatment of similarly situated non African-Americans

differed in a way giving rise to the inference of discrimination and finding likewise with

respect to First Amended Complaint).

The court's prior determination that the required element of more favorable treatment

of workers outside the protected class permitting the inference of racial bias was unfulfilled

was based on the observation that Plaintiff had failed to allege that *managers or supervisors*

had treated Plaintiff differently so as to give rise to the inference of racial bias.  See Doc. # 42

at 8:3-6 ("Essentially, Plaintiff is burdened to plead facts to show that a non-African

American would not have been scrutinized to the same level, would not have been subjected

to drug testing as a result of the accident and/or would not have been placed on the night shift

with the same job conditions as Plaintiff").  In the court's view, the facts pled for the first

time in Plaintiff's SAC are sufficient to state the element that was previously unsupported.

In the SAC, Plaintiff alleges for the first time:

> Plaintiff was the only employee drug tested on site and taken to the hospital
> while the [W]hite employees are never taken to the hospital for additional
> testing if they are tested at all. [Defendant's] company records will establish
> that [W]hite employees are not tested after accidents and are not taken to
> Tehachapi Hospital for additional testing for drugs as the plaintiff. [Sic.]

Doc. # 44 at 6:19-22.

In sum, Plaintiff has alleged facts that show or suggest: (1) Plaintiff was either not

causally connected to the accident or was only peripherally connected to the extent he took

the vacuum truck driver at his word when he told Plaintiff that he did not need instruction on driving the truck; (2) Plaintiff was subjected to preliminary drug testing at the work site based on the occurrence of the accident while no White employee, including the driver of the vacuum truck that actually had the accident, was similarly tested; (3) Plaintiff's preliminary drug tests at the work site were negative, a result that, if true, raises substantial questions regarding Defendant's decision to undertake more definitive testing when similar testing was not/has not been required of non-African American employees; and (4) Plaintiff has maintained throughout that he never used or was under the influence of any illicit drug.  The court finds that the sum of allegations indicating that Plaintiff was subjected to confirmatory drug testing in the absence of any preliminary indication of drug use and in the absence of any similar testing of non-African-American workers is sufficient to support an inference of racial bias.  Defendants' motion to dismiss Plaintiff's claim for unlawful discrimination in violation of Title VII under the legal theory of disparate treatment will therefore be denied.

## II.  Other Title VII Claims or Theories

The portion of Plaintiffs' SAC that is headed, "Claim 1" alleges violation of 42 U.S.C. §§ 2000, 2000e-2 and 2000e-3 without any explanation of how subsections 2000 (Definitions) or subsection 2000e-3 (Other Unlawful Employment Practices) might apply to the facts alleged.  The court has previously discussed and dismissed any claims under subsection 2000e-2 based on theories of retaliation or hostile work environment.  Plaintiff's SAC does not allege any facts that would alter the court's prior analyses under those two theories.  Therefore, to the extent Plaintiff may have intended that his SAC allege claims for violations of Title VII based on theories of retaliation and/or hostile work environment, those claims will be dismissed.  To the extent Plaintiff may have intended that the SAC set forth some other non-specified claim or claims for violation of 42 U.S.C. § 2000e-3, that claim or claims will be dismissed with prejudice as insufficiently pled.

6

### III. Fourth Amendment Claim

Plaintiff's "First Claim" in the SAC also purports to allege a claim under 42 U.S.C. § 1983 for unreasonable search in violation of his rights under the Fourth Amendment. "To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right. [Citation.]" <u>Wood v. Ostrander</u>, 587 (9th Cir. 1989). Plaintiff's claim under section 1983 fails because Defendant did not obtain samples or conduct screening or confirmatory testing for the presence of drugs under color of state or federal law. Plaintiff appears to recognize that a claim under section 1983 requires action under color of state law when he points out that a search by a private person may implicate the Fourth Amendment if the search is directed or coerced by the government. <u>See</u> Doc. # 55 at 10:14-17 (citing standard for finding of state action through private actors). While Plaintiff correctly cites the standards for a finding of state action conducted through private actors, he presents no facts whatsoever to support the proposition that Defendant, a private company, was acting at any time under color of state or federal law. Plaintiff's claim under section 1983 therefore will be dismissed with prejudice.

### IV. Claim Under Labor Management Relations Act

The National Labor Management Relations Act ("LMRA" or "Act"), 29 U.S.C. §§ 151 et seq. specifies  conduct that is unfair under the Act for employers, § 158(a), and labor unions. §158(b).  In general, employers are prohibited from interfering with the workers' exercise of their rights under contracts (or CBA's) between unions and employers.  Despite Plaintiff's protestations to the contrary, it has never been entirely clear what conduct by *Defendant* is alleged to constitute the violation of the CBA.[1]  Plaintiff's SAC can be

---

[1]  Plaintiff, in his opposition to Defendant's motion to dismiss, points out that there is a separate action against Plaintiff's Union currently pending before the NLRB based on the Union's alleged failure to carry out its required representation of Plaintiff.  The Union is not a party to this suit and the court's opinion with regard to the motion now before should not be taken as reflecting any opinion with regard to Union's representation of Plaintiff.

interpreted in two ways.  First, Plaintiff has repeatedly alleged his preliminary tests were negative and, as a result , the Substance Abuse Policy (which the court presumes for purposes of this opinion is part of the CBA between Union and Defendant) does not authorize the further confirmatory testing that occurred at the hospital.  The second possibility is that Plaintiff is basing his LMRA claim on the alleged fact that Plaintiff was subject to both preliminary testing at the worksite and to confirmatory testing at the hospital, both without the presence of Union representation.

With regard to the first possible interpretation of Plaintiff's LMRA claim – that the performance of confirmatory drug testing at the hospital in the face of negative preliminary screening tests – the Substance Abuse Policy (hereinafter "Policy") provides only that negative results with the preliminary tests are "strong evidence that the drugs in question are not present in excess of the detection limits of the assay."  See Doc. # 29 at 33.  On the other hand, if results of the preliminary tests are positive, " a confirmation test [by Gas Chromatography/Mass Spectroscopy] will automatically be administered."  Id. at 34.  While the Policy definitely provides that confirmatory testing will be performed in the presence of a positive screening test, the Policy does not prohibit confirmatory testing in the presence of negative preliminary results.  The court finds that language of the Policy, although regrettably vague, may be interpreted to provide weight to Plaintiff's contention that the sample used to do the confirmatory testing was mishandled in view of the negative results obtained during preliminary testing.  However, the court finds the fact that confirmatory testing was carried out in the absence of positive screening test results does not constitute a breach of the CBA or a basis for a claim for relief under the LMRA.

With regard to the lack of Union representation, the Policy provides that a Union representative will be "present" during the on-site preliminary testing, but does not specify a function for the Union representative other than to review the results of the preliminary testing.  Doc. # 29 at 34.  As to off-site confirmatory testing, however, the Policy specifies

8

that a employee who is to be transported to a medical facility for confirmatory testing "will be accompanied by a [U]nion representative." Id. at 33.  While Plaintiff's SAC, as well as his prior pleadings, do not allege that there was no review of the preliminary drug test results by a Union Representative, Plaintiff has continuously maintained that Defendant notified the Union that Plaintiff was to be transported to the hospital for confirmatory drug testing and that the Union declined to designate a representative to accompany Plaintiff.  While a company that "participates" in union conduct that violates the LMRA may itself be held liable for its part in that conduct, Vaca v. Sipes, 386 U.S. 171, 178 (1967), the facts alleged in Defendant's SAC do not support a finding or inference that Defendant was a "participant" in failing to provide Union representation.  Defendant did its part by informing the Union that Plaintiff was to be transported for confirmatory drug testing.  There is no allegation that the Union requested a delay so that a representative could be supplied.  Logically, it cannot be the case that Defendant is held liable as a result of conducting a confirmatory drug testing because the Union, after being informed of the situation, declines to provide a representative. If that were the case, the entire purpose of the Policy could be thwarted by the Union simply by declining to provide representation when the Policy calls for it.  The court finds that facts are lacking to show that Defendant was a "participant" in the failure to provide a Union representative at the time Plaintiff was transported for confirmatory drug testing.

The court has previously considered other possible legal theories for Plaintiff's LMRA claim, including Plaintiff's vague and confusing claims concerning the conduct of various hearings.  The court notes that Plaintiff's SAC does appear to contain some facts referring to Defendant's conduct (or non-conduct) of an investigation into the accident.  The court finds, however, that any facts concerning any hearings or lack of hearings are not connected with allegations of *Defendant's* violation of the CBA.  The court therefore concludes that the sole basis of Plaintiff's claims for Defendant's violation of the CBA is confined to allegations surrounding the conduct of the preliminary and confirmatory drug

9

tests. The court finds the facts alleged fail to state a claim under the LMRA for which relief can be granted. Plaintiff's claim or claims under the LMRA will therefore be dismissed with prejudice. Because the court has determined that Plaintiff's claim under the LMRA is substantively deficient, the court need not address whether the claims continue to be barred by failure to exhaust remedies under the CBA.

**V. Age Discrimination Claim - ADEA**

The court previously noted that the "elements of a prima facie case for age discrimination are (1) the plaintiff is in the age group protected by the ADEA; (2) he was discharged or demoted; (3) at the time of his discharge or demotion, he was performing his job at a level that met his employer's legitimate expectations; and (4) following his discharge or demotion he was replaced by someone of comparable qualifications outside the protected class." O'Connor v. Counsol. Coin Caterers Corp., 517 U.S. 308, 310, 1996). Plaintiff's ADEA claim was dismissed from the original complaint because Plaintiff failed to allege his own age; the claim was dismissed from the First Amended Complaint because Plaintiff failed to allege that the person who replaced him was outside the protected class.

Plaintiff alleges in his SAC that he consistently passed over for promotions that went to "younger [W]hite male employees under age forty (40) and the [P]laintiff was fifty-five (55) years-old at the time of termination." Doc. # 44 at 5:23-25. Plaintiff also alleges that the individual who actually had the accident was a White male under forty years of age who was not subject to the same level of scrutiny as Plaintiff. These facts allege nothing about the person who replaced Plaintiff in his position as laborer. A claim for age discrimination under the ADEA is more circumscribed than a claim under Title VII. An ADEA claim requires that the plaintiff be demoted or discharged from his job and that he be replaced by an individual who is not more qualified and who is not within the age range protected by the ADEA. In the absence of factual allegations to show the characteristics of the person who replaced Plaintiff at his laborer's job, the claim of age discrimination under ADEA must fail.

**CONCLUSION AND ORDER**

The court is going to grant Defendant's motion to dismiss as to all claims alleged in the SAC *except for* Plaintiff's claim for violation of Title VII of the 1964 Civil Rights Act on the legal theory of disparate treatment.  Because the court has concluded that Plaintiff's other claims cannot be cured by further amendment of the complaint, the claims that are dismissed will be dismissed with prejudice.  What this means is that Plaintiff's Title VII claim only moves to the next stage of the proceeding; a stage where Defendant may move for summary judgment on Plaintiff's remaining claim.  At the summary judgment stage, both parties are able to submit evidence not contained in the complaint; evidence in the form of witness declarations or actual drug testing results or other documents.  If the Defendants can show that they are entitled to judgment based on the undisputed facts they present, the court may enter judgement without further proceedings.  Plaintiff may submit evidence, again in the form of witness statements or other admissible documents, to oppose Defendant's motion for summary judgment.  Plaintiff is cautioned that it is his responsibility to gather and present any evidence he may want the court to consider in opposition to any motion for summary judgment that is filed by Defendant.

THEREFORE, it is hereby ORDERED that Defendant's motion to dismiss is DENIED with respect to Plaintiff's claim for violation of Title VII of the Civil Rights Act of 1964 on the legal theory of disparate treatment ONLY.  Defendant's motion to dismiss is GRANTED with prejudice in all other respects as to Plaintiff's Second Amended Complaint.

IT IS SO ORDERED.

Dated:  ___June 12, 2013___                         _____
                                                                              SENIOR DISTRICT JUDGE