IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RAY JONES, SR.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>LEHIGH SOUTHWEST CEMENT COMPANY, INC., a California Corporation; And DOES 1-50,<br><br>　　　　Defendant. | 1:12-CV-0633  AWI JLT<br><br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Doc. # 86 |

　　　This is an action by plaintiff William Ray Jones, Sr. ("Plaintiff") for damages pursuant to Title VII of the Civil Rights Act of 1964 against defendant Lehigh Southwest Cement Company, Inc. ("Defendant"). The action arises out of Plaintiff's termination from employment by Defendant following positive tests for the use of drugs prohibited under the terms of a collective bargaining agreement. As a result of prior rulings by the court on Defendant's motions to dismiss, Plaintiff proceeds in this action under his Second Amended Complaint ("SAC") on a theory of disparate treatment on account of race in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). Currently before the court is Defendant's Motion for Summary Judgment (hereinafter, Plaintiff's "Motion"). For the reasons that follow, Defendant's Motion will be granted. Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331. Venue is proper in this court.

## DEFENDANT'S PROFFERED UNDISPUTED MATERIAL FACTS

The following facts are summarized from Defendants statement of undisputed material facts ("UMFs"). Doc. # 86-2.

Defendant employed Plaintiff as a laborer from about December 7, 2007 to on or about August 19, 2011. On August 9, 2011, Plaintiff was tasked with training a co-worker, John Tester, on the use of a vacuum truck. During the course of training on the operation of the vacuum truck, Tester backed the vacuum truck into a pallet holding a transmission unit damaging both the transmission on the pallet and the vacuum truck (hereinafter, the "Accident"). Defendant has established written policies entitled, "Work Rules and Recommended Disciplinary Steps," (hereinafter "Work Rules") which provide procedures to be followed in the event of an accident. The Accident involving the vacuum truck fell within the scope of events covered by the Work Rules. The Work Rules provide that all employees who are involved in workplace accidents that result in damage of $100 or more, or personal injury, will be subjected to Defendant's drug-testing procedures. Defendant determined that the damage to the vacuum truck from the August 9, 2011, Accident exceeded $100.

Plaintiff and Tester submitted to a drug test on August 9, 2011, pursuant to the terms of the Work Rules. Prior to his August 9, 2011, drug test, Plaintiff was given the opportunity to voluntarily submit to rehabilitation in lieu of the drug test and avoid the potential for discharge upon a positive test. Plaintiff declined the offer of rehabilitation and decided to take the "field drug test" on August 9, 2011. Plaintiff urinated into a cup and provided it to Defendant for the purpose of drug testing. Plaintiff's sample tested positive for the presence of tetrahydrocannabinoids ("THC") which is a prohibited substance under the terms of Defendant's Substance Abuse Policy. Plaintiff was then transported to Tehachapi Valley Healthcare Center (hereinafter "Tehachapi Valley") for further testing pursuant to Defendant's Substance Abuse Policy. Plaintiff provided a second urine specimen for testing to Tehachapi Valley. The second test performed by Tehachapi Valley also yielded a positive result for the presence of THC. A portion of Plaintiff's second specimen was also submitted to Quest Diagnostics for

Chromatography/Mass Spectroscopy (hereinafter "GC/MS") testing, to determine whether the quantity of cannabinoids in the specimen exceeded the thresholds established in the Substance Abuse Policy. Quest Diagnostics' test detected a quantity of THC of 61 ng/ml., more than four times the limit for that substance under the terms of Defendant's Substance Abuse Policy. After receiving the results of the drug test from Quest Diagnostics, Defendant terminated Plaintiff's employment.

The court notes that Plaintiff did not submit a response to Defendants UMFs  and did not submitted a separate statement of disputed material facts. Rather, Plaintiff's opposition to Defendants Motion appends approximately 232 pages of exhibits, which include his declaration, declarations from several witnesses to the Accident. Some emails between supervisory employees, a copy of his motion to compel and Defendant's opposition to the motion and a complete copy of Plaintiff's Deposition are also appended to the opposition. The copy of the transcript of Plaintiff's deposition comprises the bulk of the attachments at about 170 pages. The attachments to Plaintiff's opposition do not highlight any facts but the court will refer to them as may be relevant to the analysis that follows.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

**DISCUSSION**

As noted previously, Plaintiff's sole remaining theory of recovery is pursuant to Title VII, 42 U.S.C. § 2000e-2(a)(1) under a theory of disparate treatment.  The court previously outlined the elements of a prima facie case for disparate treatment as follows:

> To establish a prima facie case of race discrimination, an employee must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action gives rise to an inference of discrimination.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Fonseca v. Sysco Food Services

of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004)). Essentially the same claim can be stated in the more general context of racially discriminatory treatment by recasting the elements as follows: (1) the plaintiff is a member of a protected class; (2) plaintiff engaged in conduct similar to workers outside the protected class; and (3) the plaintiff was disciplined more harshly than non-class members who engaged in similar conduct. See, e.g., Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1105-1106 (4th Cir. 1985). In the context of a motion for summary judgment, federal courts apply the burden-shifting analysis set forth in McDonnell Douglas:

> The employee must first establish a prima facie case of discrimination. If he does, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, if the employer satisfies this burden, the employee must show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Dawson v. Entek Intern, 630 F.3d 928, 935 (9th Cir. 2011).

Defendant contends it is entitled to summary judgment because the undisputed evidence shows that Plaintiff did not engage in conduct similar to workers outside the protected class and because Plaintiff has presented no evidence to show that those outside his class were treated differently or more with more lenience. Specifically, Defendant contends Plaintiff has not demonstrated he was performing his job satisfactorily or engaging in conduct similar to others outside his protected class because he tested positive for the presence of levels of THC that exceeded the levels established by company policy. Defendants contend Plaintiff has presented no evidence to show that similarly situated individuals outside his protected class were treated more favorably. Defendants also contend that, even if Plaintiff could produce evidence to support a prima facie case, Defendant is entitled to summary judgment because Defendant has proven a non-discriminatory reason for terminating Plaintiff's employment.

   Plaintiff, in his opposition and in his deposition alleges he was not in the vicinity of the Accident.  See Doc. # 87 at 32:19.  From this, Plaintiff reasons that Defendant had no cause under the Work Rules to require that Plaintiff submit to drug testing.  Oddly, the declarations submitted by Plaintiff that are appended to his opposition describe plaintiff as not being removed from the Accident, but that he was somewhere behind the vacuum truck "spotting" or directing Tester while he backed the truck up.  See Doc. # 87 at 12 (Declaration of Tester), p. 14 (Salmon Dec.); see also, Doc. # 87 at 16 (Plaintiff "spotting" for Tester the account incorporated into official report by Terry Moody).  The report by Moody also alleges below-acceptable performance based on the fact that Plaintiff, the senior person appointed to supervise Tester's training on the vacuum truck, had the responsibility to report the Accident but did not do so.  Plaintiff's position is that he was nowhere near the Accident and was therefore not the person who should have reported it.

   While there appears to be a factual dispute with regard to where Plaintiff was located at the time of the Accident, the difference between Plaintiff's account and the witness accounts does not make a difference with regard to the determination of whether Defendant was reasonable in concluding Plaintiff was involved in the Accident.  There is no dispute that Plaintiff was tasked with *supervising* Tester, and that he had ultimate responsibility for Tester's actions whether or not Tester did something that he was not instructed to do.  In particular, Plaintiff had the responsibility, for example, of assuring that the vacuum truck was not moved before Plaintiff was on hand to guide it and, even in the event that Tester did not perform according to directions, Plaintiff had the responsibility to assess and report any accident.  The court finds that Defendant's apportionment of some responsibility to Plaintiff for the accident, and the consequent requirement that Plaintiff submit to drug testing under the terms of the Work Rules, was reasonable in light of the undisputed facts.  The undisputed facts are sufficient to

show that Plaintiff's performance on the occasion of the accident was not similar to what would have been expected from a worker outside the protected class.

As Defendants also note, the undisputed facts in this case do not support the proposition that other workers outside Plaintiff's protected class have experienced more favorable treatment than Plaintiff experienced. It is Plaintiff's burden to establish facts supporting both his prima facie case and, if Plaintiff does allege a prima facie case and Defendant alleges a non-discriminatory reason for the adverse action, facts supporting his contention that Defendant's reasons were pretextual. Plaintiff's failure to adduce any facts at all regarding Defendant's treatment of employees outside Plaintiff's protected category who have been involved in accidents resulting in injury or monetary loss over $100 is fatal to both Plaintiff's prima facie case and to any chance of showing that Defendant's reliance on drug testing results to terminate Plaintiff were pretextual. Essentially, Plaintiff has provided no facts from which the court could conclude that non-African American employees who are involved in accidents are routinely not tested for drugs and/or that employees who do test positive for drugs in amounts similarly in excess of policy-established limits are routinely not terminated. Thus, Plaintiff can establish neither differential treatment nor pretext.

Under some circumstances, it is possible to demonstrate discriminatory conduct without reference to treatment of individuals outside the protected class but these circumstances are not present here. "Instead, [of applying the McDonnell Douglas framework, a plaintiff] may 'simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated' the defendant and that the defendant's actions adversely affected the plaintiff in some way." Pacific Shores Properties, LLC v. City of Newport Beach, 730 F.3d 1142, 1159 (9th Cir. 2013) (internal citation omitted). The reason Plaintiff is tied in this case to the McDonnell Douglas analysis is that there are simply no facts, direct or implied, that indicate a

discriminatory motive behind Defendant's decision to require drug testing or to apply established policies in deciding to terminate Plaintiff's employment. While Plaintiff has made a point of the fact that he was the only African-American working for Defendant during the time of his employment, that fact alone is not sufficient to allow the inference that Defendant had a discriminatory motive in terminating him some three-and-a-half years after he was hired.  There is nothing to indicate that other African-Americans had applied for employment and had been excluded or that anyone connected with the administration of Defendant had made statements indicating racial animus directed to Plaintiff or to anyone else.

The court concludes that Defendants have presented facts sufficient to show a non-discriminatory reason for their termination of Plaintiff's employment and Plaintiff has failed to produce any evidence of that considerations of race had any part in Defendant's decision to require drug testing on Plaintiff or to terminate his employment.  Defendant is therefore entitled to summary judgment.

THEREFORE, it is hereby ORDERED that Defendant's motion for summary judgment is hereby GRANTED.  The Clerk of the Court shall enter judgment in favor of Defendant and shall CLOSE THE CASE.

IT IS SO ORDERED.

Dated:   May 15, 2014

SENIOR  DISTRICT  JUDGE